## WILL PARKER v. THE STATE.

No. 1744. Decided January 11, 1899.

1. **Bill of Exceptions in Statement of Facts Filed After Term—Practice on Appeal.**

Where a bill of exceptions to evidence is only contained in the statement of facts filed after adjournment of the term, it will not be considered on appeal.

2. **Alibi—Charge.**

The court is not required to charge upon alibi where the evidence does not clearly present such issue; and the issue is not raised where the defendant's evidence upon the matter is consistent with the State's theory of defendant's presence at the time and place of the occurrence.

3. **Requested Instructions.**

It is not error to refuse requested instructions which are adequately presented in the charge given.

4. **Same—Bill of Exceptions.**

A refusal to give an instruction relative to admitted testimony will not be considered where no bill of exception was reserved to its admission.

5. **Confession—Facts Ascertained by Means of.**

A confession is admissible in evidence, though defendant was not warned, where, in pursuance of said confession, the facts stated therein, not previously known, were found to be true as stated.

6. **Murder in the Second Degree—Charge.**

On a trial for murder, the court is not required to charge upon murder in the second degree where all the evidence tends to show that the killing was for the purpose of robbery.

7. **Accomplice Testimony—Charge as to Not Required, When.**

On a trial for murder, where it appeared that some time after the homicide defendant confessed to one C., a fellow-prisoner in the jail, that he had killed deceased for the purpose of robbery, and had robbed him of $2800, which he had buried at a certain place, and which C., after he was discharged, was to get and take a portion and give the balance to the wife of defendant; all of which confession was disclosed by C. to a deputy sheriff. And it further appeared that C. nor anyone else ever found or got the money at the place defendant said he had concealed it. Held, C. was not an accomplice after the fact, nor an accessory, and the court did not err in failing or refusing to submit the law of accomplice testimony as to his testimony.

8. **Defendant's Failure to Testify—Charge as to.**

It is not error for the court to instruct the jury as to defendant's statutory rights as a witness in his own behalf, and it is proper to tell them, "You must not directly or indirectly, verbally or mentally, take such failure to testify as a circumstance against the defendant, nor must you either directly or indirectly allude to or refer to or mention such failure." Following Fulcher v. State, 28 Texas Criminal Appeals, 465; Guinn v. State, 39 Texas Criminal Reports, 257.

APPEAL from the District Court of Bell. Tried below before Hon. JOHN M. FURMAN.

Appeal from a conviction for murder in the first degree; penalty, imprisonment for life in the penitentiary.

Appellant was indicted for the murder of Amos McQuiston, on the 29th day of April, 1898, by shooting him with a gun. The deceased, Amos McQuiston, was an old man who lived alone on his farm a mile or so out from the village of Heidenheimer, and was supposed to keep always quite a sum of money about his premises. He was last seen alive about sundown on Friday evening. On Saturday he was found dead in his house about 3 or 4 o'clock p. m. He had been shot with bullets or buckshot, some two or three of which were cut out of the body by the physicians who examined the body at the inquest. On Friday evening, just after dark, two young girls who were going to a party saw defendant Will Parker get through a barbed wire fence and go across some small fields in the direction of McQuiston's house; and a man in a wagon also saw a party he took to be the defendant about the same time going in the same direction. Defendant was carrying what these parties took to be quite a long stick in his hands. Before dark that evening, defendant, who had been drinking a good deal, asked a saloon-keeper what he owed him, and upon being told his account was some $8 or $9, said he did not have a cent, but would not be in that condition always. About midnight of the Friday McQuiston was last seen, defendant came into Salyer's restaurant, in the city of Temple, and ordered supper for himself and two women with him, and he gave the restaurant keeper a $20 bill to change to pay for the supper, which cost only 80 cents, saying that it was the smallest bill he had. After he had eaten his supper, he went to a saloon, where he lost quite a sum of money at "craps." About 12 o'clock he deposited $130 or $140 at the Ruby saloon, which he said he had won.

About the 11th of May defendant was arrested and put in the county jail at Belton. There were several prisoners confined in the jail at the time, and among them were Joe Carter, Jim Wilson, and Charles Carley. Carley was a witness for the State on the trial, and testified to a confession the defendant had made to him in jail on June 11th. He told of his killing McQuiston. He said he was disguised, and when he got to McQuiston's he pointed his gun at him and demanded his money, and that the old man went to his trunk and got some greenbacks wrapped up in an old piece of ducking, and as he started off with it the old man followed him out on the gallery, and said, "Parker, do you aim to rob me of all my money,—all I have in the world?" and as he said that defendant shot him and he fell on the gallery, and he dragged him back into the house. He said he shot him with slugs and shot, he not having enough buckshot to make a load for his gun. He had put eight or nine slugs which he had made into the gun. He then described the locality between Heidenheimer and Temple where he had burnt his disguise, and the spot where he had buried $2385 of the money, and gave Carley a diagram of the locality, so that when he got out of jail he might go and get the money. That he, Carley, must take part of it for his pay, and give the rest to his (Parker's) wife. Carley told Jim Wilson, one of his fellow-prisoners, what defendant had told him, and Wilson told it to

Mr. Polk, the deputy sheriff and jailer. It seems that the officers searched for the money, but did not find it. They did find, however, the place where defendant said he had burnt his disguise, and found portions of the clothing, some buttons, and a hat at the place where the fire had been.

After the officers had been told of this confession, and defendant's statement that he had shot McQuiston with a gun partly loaded with slugs,—a fact which had not been ascertained before,—they had the body exhumed on the 11th of July and dissected by physicians, and five missiles were taken from the body, which on the trial were pronounced by experts to be slugs, and not bullets or buckshot.

There were several other important facts stated by Carley as having been told him by the defendant, which were corroborated by other testimony.

No further statement necessary.

*A. L. Curtis* and *James E. Ferguson,* for appellant.

*Jas. P. Kinnard,* District Attorney of the Twenty-seventh District, and *Mann Trice,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at confinement in the penitentiary for life; hence this appeal.

There are no bills of exception contained in this record to the admission or rejection of testimony, except such as are in the statement of facts. The statement of facts having been filed after the adjournment of court, we can not consider any of said bills of exception.

In the motion for a new trial, appellant excepted to the refusal of the court to give certain requested charges, and to the failure of the court to charge on certain aspects of the case in his general charge. Among other things complained of is the failure of the court to give a proper charge on the question of alibi. We do not think there is any error in the court's failure to charge on the question of alibi, because in our opinion there was no evidence requiring such a charge. The homicide was committed about one mile from Heidenheimer, in Bell County, on the 29th of April. Evidently the killing occurred in the early part of the night. The deceased lived alone, and his dead body was not discovered until some time the next evening. The State's testimony tended strongly to show that appellant was seen, about dark, going in the direction of the house of the deceased, with a gun. When last seen, he was not more than 500 or 600 yards therefrom. The evidence of the defendant, in our view, does not remotely suggest an alibi. His wife testified that he left his home in Heidenheimer about dark, saying that he was going to Temple, which was some six miles distant from Heidenheimer. He was not seen at Temple until about 12 o'clock that night. This testimony not only fails to exclude the idea of his

presence at the place of the homicide, but, as stated above, was not sufficient to require the court to give an instruction on alibi. His leaving home about dark, and his appearance at Temple about 12 o'clock on that night, is entirely consistent with the State's theory that he was present at the scene of the homicide, and did the shooting.

There is nothing in appellant's contention that the court erred in giving the charge on circumstantial evidence, nor in refusing to give the requested charge. The charge given is in accordance with the approved form on that subject.

Appellant complains of the action of the court in refusing to give an instruction to the jury on the subject of the confession of appellant while in jail, as testified to by the witness Carley. Said requested charge was substantially to the effect that the jury would not regard said confession unless, in pursuance thereof, some fact was ascertained to be true, as confessed by appellant, showing his connection with the crime, such as the finding of the instrument with which he stated the offense was committed. We would observe, in this connection, that the court gave a charge on this subject embodying the principles suggested in appellant's charge. We think the court's charge adequately presented the propositions of law on the subject. However, so far as the record before us is concerned, no bill of exceptions was reserved to the admission of the testimony of Carley as to the confession made by appellant to him; and, under the circumstances, if the court had not charged on the subject at all, there would have been no error. We would further observe, in this connection, that if we recur to the statement of facts embodying this testimony, and bills of exception embraced in said statement of facts, it appears that appellant was not warned at the time the alleged confession was made, and Carley's testimony was not admitted on that ground, but was admitted by the court on the ground that appellant, in connection with his confession, made a statement of facts or circumstances, subsequently found true, which conduced to establish his guilt; and, in this regard, the testimony further discloses that deceased was shot with slugs. This fact was not known anterior to appellant's confession; and, in pursuance of that confession, the body was exhumed, and it was then ascertained that it was true, as had been stated by appellant, that shot, or at least some of the shot, which entered the body of the deceased, were slugs. True, some of the shot had been taken from the body previously by a physician; but it was not known or discovered by him, or anyone else, that said shot were slugs, prior to the confession of appellant. So it occurs to us, even if the question had been properly saved as to the admission of this testimony, that it was properly admitted, on the ground that, in pursuance of said confession, the nature and means by which the killing was done were subsequently ascertained; and, as stated before, the court properly submitted this matter to the jury in its charge.

Appellant complains of the court's failure to charge on murder in the second degree. We fail to find any evidence in the record to sup-

port such a charge. The confession of the appellant himself excludes such an idea, and all the evidence tends to show that the killing was for the purpose of robbery.

In the motion for new trial, appellant says the court erred in failing to give a charge on accomplice testimony, and the necessity of its corroboration. It is not suggested, in the motion for a new trial, in connection with this ground, what witness was claimed to be an accomplice. We have, however, carefully examined the record in that regard, and fail to find any witness who testified in the case who required a charge on accomplice testimony. We presume, however, that appellant claims that the charge should have been given in connection with the testimony of Carley. This witness testified that he was in jail when appellant was put in jail, and he continued to be in jail up to the time of this trial. While in jail, he states that appellant confessed to him that he had shot and killed deceased for the purpose of robbery; that he got some $2800 from him, which he had buried in a particular spot, which he described to witness, and gave him a diagram, by which he could find the place where said money was buried; that said information was imparted to witness with the understanding that, when he got out of jail, he was to find the money, and take a portion of it for his trouble, and give the balance to the wife of appellant. Witness further states that they took one Wilson, who was also in jail, into their confidence, who was to assist in getting the money; that Wilson took Pollard, a deputy sheriff, into his confidence, and he evidently gave the matter away to the officers. The witness shows that he never procured or received any of said money; and never went to the place where it was said to have been hidden; that he did not tell anybody but Wilson about it; and that he would not have told anybody; that he was summoned before the grand jury, and was there compelled to disclose what he knew. The question here presented is, do the facts stated constitute the witness Carley an accomplice? We understand the term "accomplice" to mean some person connected with the crime by unlawful act or omission on his part transpiring either before, at the time of, or after the commission of the offense; and the general rule requires that he be either a principal, accomplice, or accessory, technically speaking. There is no pretense here that the witness Carley knew anything of the offense until after its commission. He was in jail at the time of its commission, so that there can be no claim that he was either a principal or an accomplice; that is, one who, before the act, advises or encourages the principal to do the act. Was he an accessory? The record tends to show that the homicide was committed for the purpose of robbery, and it is no offense, by our statute, to receive property taken in the perpetration of robbery, as it is in theft. So that there could be no conspiracy to commit the offense of receiving property acquired by means of robbery, as there could be in the case of theft. Nor did the witness agree to do or perform any act, in aid of the defendant, to evade a trial, which would have made him a technical accessory in the original offense of murder; and the fact is that

he did nothing, either by himself or by another. No money is shown to have been discovered by anyone, much less by witness, in the place where defendant, according to the witness, stated it had been concealed, nor in any other place. In our opinion, the witness Carley was not an accomplice, and the court did not err in failing to give a charge in regard to accomplice testimony.

It is urged by appellant that the court erred in the charge given on the appellant's failure to testify. The charge is as follows: "You are further charged that the defendant in a criminal case is permitted by law to testify in his own behalf; but he is not in any case required to do so, and, in the event that he elects to remain silent, the law is that his failure to testify shall not be alluded to by counsel in argument, nor taken as a circumstance against him. And so, in this case, in deliberating on your verdict, you must not, either directly or indirectly, verbally or mentally, take such failure to testify as a circumstance against the defendant, nor must you, either directly or indirectly allude to, or refer to, or mention such failure." We see no error in this action of the court. It is the enunciation of the rule laid down by the statute on the subject; and it serves a useful purpose; for on more than one occasion this court has reversed cases because the jury, unwarned of this statutory provision, have discussed the failure of defendant to testify. The charge given was admonitory, and, we think, a proper one. Fulcher v. State, 28 Texas Crim. App., 465; Guinn v. State, 39 Texas Crim. Rep., 257; May v. People, 8 Colo., 224, 6 Pac. Rep., 816; 2 Thomp. Trials, 2451.

Appellant raises a question, after the trial, in motion for new trial, as to whether the witness Charles Carley had been sworn before he delivered his testimony. Issue was joined upon this question, and the court heard testimony; but we believe the court properly held that witness was sworn.

The contention that the verdict is not supported by the evidence we do not believe is well taken. Aside from the confession of appellant, the circumstances tended strongly to show that he was guilty of the homicide; and the jury were fully authorized to find him guilty of the offense charged. There being no error in the record, the judgment is affirmed.

*Affirmed.*